UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-cv-61376

DIFOLD INC.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

## COMPLAINT

Plaintiff DIFOLD INC. ("Plaintiff" or "DiFOLD"), by and through undersigned counsel, hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

### INTRODUCTION

1. This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's design patents, U.S. Patent No. D1,002,386 and U.S. Patent No. D935,892 (the "DIFOLD Patents"). The DIFOLD Patents are valid, subsisting, and in full force and effect.

---

[1] Plaintiff intends to file a Motion to Seal the Schedule A.

Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the DIFOLD Patents, which were duly and legally issued by the United States Patent and Trademark Office. True and correct copies of the DIFOLD Patents are attached as **Exhibit 1**.

2. Defendants are improperly advertising, marketing and/or selling unauthorized and noncompliant products that embody the design(s) depicted in the DIFOLD Patents (the "Infringing Products").

3. The Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A (collectively, the "Defendants").

4. The Defendants design the online marketplace accounts to appear to be selling Plaintiff's genuine DIFOLD products (the "DIFOLD Products"), while selling inferior imitations of such products.

5. The Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal infringement operation. Plaintiffs are forced to file this action to combat Defendants' infringement of the DIFOLD Patents, as well as to protect unknowing consumers from purchasing Infringing Products.

7. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged from the loss of its exclusivity of its intellectual property rights, and, therefore, seeks injunctive and monetary relief.

8. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

9. In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

10. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

11. Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and FRCP § 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District, for example:

   a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in

Florida, in this Judicial District, through accounts with online marketplace platforms such as Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, and individual sites, (collectively, the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts, seller IDs, and subject domain names that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Infringing Products (as defined *infra)* and to place orders for, receive invoices for and purchase Infringing Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

b.   Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because Defendants have committed acts of patent infringement in this Judicial District and do substantial business in the Judicial District.

## THE PLAINTIFF

13. Plaintiff DIFOLD Inc. is a corporation incorporated under the laws of Delaware with a principal place of business in Sofia, Bulgaria and is the registered owner of the DIFOLD Patents referred to above, copies of which are attached as Exhibit 1.

14. Plaintiff is a leading supplier and manufacturer of unique foldable water bottles and other containers, and has earned an international reputation for quality, reliability and value. Plaintiff is credited for many breakthroughs that have occurred in the industry, including its DIFOLD Products.

### THE DIFOLD PRODUCTS

15. Plaintiff is the official source of DIFOLD Products in the United States, which include, among others, the following:



16. Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the DIFOLD Patents (attached as Exhibit 1).

17. The DIFOLD Products in many instances embody at least a portion of the design(s) depicted in the DIFOLD Patents.

### THE DEFENDANTS

18. Defendants are individuals and business entities who, upon information and belief,

5

reside mainly in the People's Republic of China.

19.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the DIFOLD Products has resulted in significant infringement.

21.     Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, and individual sites including the Defendant Internet Stores, which were offering for sale, selling, and importing infringing DIFOLD Products to consumers in this Judicial District and throughout the United States.

22.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

23.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine DIFOLD Products.

24.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include

images and design elements that make it very difficult for consumers to distinguish such infringement sites from an authorized website.

25. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

26. Plaintiff has not licensed or authorized Defendants to use the DIFOLD Patents, and none of the Defendants are authorized retailers of genuine DIFOLD Products.

27. On personal knowledge and belief, Defendants deceive unknowing consumers by using the DIFOLD Patents without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Infringing Products themselves.

28. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

29. For example, it is common practice for infringers to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

30. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

31. On personal knowledge and belief, even though Defendants operate under multiple

fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

32. In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

33. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

34. In addition, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

35. Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

---

[2] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited July 3, 2025).

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings.

36. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of infringing goods shipped through the mail and express carriers.

37. Further, infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

38. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

39. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the DIFOLD Patents in connection with the advertisement, distribution, offering for sale, sale and import of Infringing Products into the United States and Florida over the Internet.

40. Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell infringing DIFOLD Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

---

https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited July 7, 2025).

## FIRST CAUSE OF ACTION
## DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)

41. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–40 of this Complaint.

42. Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the DIFOLD Patents.

43. For example, below is a comparison of figures from Plaintiff's DIFOLD Patents and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

*Exemplary Figures from the DiFOLD Patents*




*Exemplary Infringing Products Sold on Defendant Internet Store*



44. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

45. Defendants have infringed the DIFOLD Patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

46. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

47. Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, embodiment, copy or colorable imitation of the designs claimed in the DIFOLD Patents;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine DIFOLD Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the DIFOLD Patents;

   c. further infringing the DIFOLD Patents and damaging Plaintiff's goodwill;

   d. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the DIFOLD Patents;

   e. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe the DIFOLD Patents; and

   f. operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the DIFOLD Patents.

  2. Entry of an Order that Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, individual sites, and any other online marketplace account provider:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

    b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

    c.  take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

  3.  That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the DIFOLD Patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

  4.  That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of Plaintiff's DIFOLD Patents be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

  5.  In the alternative, that that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's DIFOLD Patents, pursuant to 35 U.S.C. § 289;

  6.  That Plaintiff be awarded its reasonable attorneys' fees and costs; and

  7.  Award any and all other relief that this Court deems just and proper.

Dated: July 7, 2025        Respectfully submitted,

                **BOIES SCHILLER FLEXNER LLP**

                */s/ Valeria Munoz*
                Valeria Munoz (FL Bar No. 1059554)
                100 SE 2nd Street, Suite 2800
                Miami, FL 33131
                Tel: (305) 357-8433
                vmunoz@bsfllp.com

                ***Counsel for Plaintiff DiFOLD Inc.***